**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| INTELLIGENT WELLHEAD SYSTEMS, INC., and IWS USA CORP., | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 6:24-cv-00263-JCB |
| DOWNING WELLHEAD EQUIPMENT, LLC, | § § § § | |
| *Defendant*. | § § | |

**DEFENDANT DOWNING WELLHEAD EQUIPMENT, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

I. **IWS's Trade Secret Misappropriation Claims Should be Dismissed.**

As IWS acknowledges, a plaintiff must "describe its trade secrets with enough specificity to enable the defendant to understand the claim and prepare a defense." Dkt. 33 at 9. IWS has not done so, and its Response merely highlights these defects.

A. **IWS fails to identify a protectable trade secret.**

IWS does not (and cannot) claim the concepts of "background software architecture," "polling structures," or "handshake protocols"—all of which are well-known features in software applications across all industries. Instead, IWS asserts that its trade secrets lie in the "uniqueness" of its particular "software architecture," "polling structure," and "handshake protocol." *See id.* at 8. IWS does not (and cannot) back up this assertion.

While IWS argues that the FAC contains "facts, details, explanations, examples, and evidence" explaining how IWS's software features are unique and entitled to trade secret protection, those "facts, details, explanations, examples, and evidence" are notably absent from IWS's FAC and its Response. Instead, IWS merely repeats generic statements of alleged specificity, without providing any detail as to the uniqueness or features of its software:

> "[The FAC] provides **concrete examples** of proprietary elements, such as the ***background software architecture*** and ***polling structure of its system***, which are critical components not readily ascertainable by competitors or through public sources." *Id.* at 9-10.

> "The FAC describes **specific elements** of the trade secrets with particularity, including . . . [t]he '***background software architecture*** of IWS's system,' . . . [t]he '***polling structure*** in IWS's system,' . . . '***[d]igital handshake***' . . . [and] [t]he '***system dashboard***,' which provides real-time alerts and status updates critical to operational safety." *Id.* at 10.

> "These trade secrets pertain to the **granular implementation** of IWS's proprietary technology—details ***such as source code*** and ***specific software protocols***…." *Id.* at 11.

2

> "The patents describe the general concepts of the digital handshake and real-time monitoring but lack **the granular specificity of IWS's trade secrets**, such as *source code* or *polling mechanisms*, as alleged in the FAC." *Id.* at 12.

IWS's handwaving does not provide Downing fair notice as to the scope of IWS's trade secret claims, nor does it permit Downing or the Court to plausibly separate the allegedly "confidential" or "proprietary" features of IWS's software from those that are readily available to the public. If the trade secrets lie in the *uniqueness* of IWS's "background software architecture," "polling structure," and "handshake protocol," then IWS has failed to plead any facts that identify those unique features or explain what makes them unique.

### B.        IWS's cases are inapposite.

While IWS acknowledges that it must "describe its trade secrets with enough specificity to enable the defendant to understand the claim and prepare a defense" (Dkt. 33 at 8), IWS merely asserts that its generic references to "background software architecture," "polling structure," and "digital handshake" information are sufficient. Dkt. 33 at 9. IWS relies on *GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477 (5th Cir. 2016). But *GlobeRanger* supports Downing's position, not IWS's. In *GlobeRanger*, the Fifth Circuit found that the plaintiff's testimony—"explaining ***how*** [its] technology was unique and its ability to filter large amounts of information"—sufficiently established the existence of a trade secret. *Id.* at 492. This explanation of "***how***" IWS's "background software architecture," "polling structure" and "handshake protocol" are unique is the kind of functional specificity missing from the FAC.

Next, IWS argues that "[n]either Texas nor federal law requires pre-discovery identification of trade secrets." Dkt. 33 at 8 (citing *Accresa Health LLC v. Hint Health Inc.*, No. 4:18CV536, 2018 WL 6626551, at *9 (E.D. Tex. Nov. 28, 2018)).  But the Court in *Accresa* declined to grant a motion to dismiss because the complaint identified the trade secrets with "sufficient particularity" such that the "[d]efendant [knew]…what trade secrets were

3

misappropriated." *Accresa*, 2018 WL 6626551, at *9; *Topstone Commc'ns, Inc. v. Xu*, No. 4:22-CV-00048, 2024 WL 1517637, at *3 (S.D. Tex. Apr. 8, 2024) ("While plaintiffs need not identify specific trade secrets in their pleadings, ***they do need to describe the trade secrets with enough clarity for defendants to understand how each claimed trade secret differs from information in the public domain***."). Without "sufficient particularity," Downing is denied fair notice of the scope of the claims against it.

Unlike IWS's FAC, the complaint in *Accresa* identified the alleged trade secrets with specificity—it alleged that the trade secrets existed in plaintiff's "direct primary care (DPC) system that allows employers that cover their employees' healthcare costs to give their employees freedom and flexibility to choose their own primary care doctor without driving up costs or creating inefficiencies for the employer," and that the plaintiff "accomplishes this through a proprietary system that automatically and dynamically routes funds from various employers' accounts to various physicians' accounts based on the unique plan implemented for each employer and each employer's employees." *Id.* at *8. IWS's FAC—which generically references "background architecture," "polling systems," and "handshake protocols"—lacks a comparable level of detail and fails to describe ***how*** those features accomplish IWS's alleged generic goals of "enhancing operational safety, efficiency, and reliability in hydraulic fracturing and well completion operations." *See Topstone*, 2024 WL 1517637, at *3 (alleging trade secrets in "broad categorical terms, more descriptive of the ***types*** of information that generally ***may*** qualify as protectable trade secrets" is insufficient) (quoting *Am. Biocarbon, LLC v. Keating*, No. 20-CV-00259, 2020 WL 7264459, at *5 (M.D. La. Dec. 10, 2020)).[1]

---

[1] IWS's reliance on *Fire 'Em Up, Inc. v. Technocarb Equip (2004) Ltd.*, 799 F. Supp. 2d 846 (N.D. Ill. 2011) is similarly unpersuasive. In *Fire 'Em Up*, the identity of the trade secrets at issue—plaintiff's "list of current and prospective customers, lists of current or prospective

This case is more like the authority Downing cites. For example, in *WeInfuse, LLC v. InfuseFlow, LLC*, the court found plaintiff's allegations that its trade secrets existed in its "software architecture" were insufficient because that vague disclosure failed to disclose the "special characteristics" making plaintiff's software different from the software generally known in the industry. No. 3:20-CV-1050-L, 2021 WL 1165132, at *3 (N.D. Tex. Mar. 26, 2021). As in *WeInfuse*, IWS's identification of its "software architecture" without describing the "special characteristics" of that software architecture, polling structure, or software handshake does not distinguish it from those features generally known in the industry.

  **C.**  **IWS brings duplicative patent and trade secret misappropriation claims.**

This case also presents a unique situation that neither IWS nor its cited cases address: the overlap of IWS's patent infringement and trade secret claims. Conceding that its Asserted Patents "describe the general concepts of the digital handshake and real-time monitoring," IWS nonetheless attempts to distinguish its purported trade secrets based on their "granular specificity."[2] (Dkt. 33 at 11-12). But the FAC does not provide any such "granular specificity." The Court need only ask: "what does the FAC identify as a unique feature of IWS's specific handshake protocol?" The answer: the FAC does not identify any unique features—it merely states that IWS's handshake protocol is "unique," "proprietary," or "confidential." And the FAC also does not distinguish these conclusory assertions from the statements made in IWS's own publicly available patent application about that very same handshake protocol.

---

suppliers, lists of their current and prospective business partners, [and] combinations or compilations of materials necessary to create the Diesel Magnum or perform certain services"— was self-evident. *Id.* at 849-50. IWS's FAC neither comprises this level of specificity nor asserts these types of self-evident trade secrets.

[2] This argument is inconsistent with IWS's assertion that the "handshake protocol" is a specific technological improvement for the purposes of patent eligibility.

Moreover, IWS's assertion that its trade secret handshake protocol covers "non-patented aspects" of its invention is belied by the fact that ***IWS cites the exact same evidence for both trade secret misappropriation and patent infringement.*** For example, IWS alleged that Downing's use of a "digital handshake" that is "tied to each person authorized to use the system" constitutes trade secret misappropriation. Dkt. 33, ¶¶ 51-52 (citing "Automated Completion Surface System: The Path to Fracturing 24/7." SPE-213101-MS). But IWS also alleged that Downing's use of the same "digital handshake" infringes the '708 Patent. Dkt. 27-10 (same). Both cannot be true—either (1) there is some undisclosed detail that distinguishes IWS's trade secret handshake protocol from its patented handshake protocol, or (2) no such detail exists and IWS's alleged trade secrets and its patent claims are synonymous. In either case, the FAC should be dismissed. If (1) is true, then the FAC fails to identify IWS's trade secrets with "sufficient particularity" to put Downing on notice of the scope of its claims. *Accresa*, 2018 WL 6626551, at *9.  If (2) is true, then IWS's own patent preempts its trade secret claims. *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329 (Fed. Cir. 2013) (information publicly disclosed in a published patent application before the alleged misappropriation cannot constitute a trade secret "as a matter of law.").

        **D.**        **IWS fails to allege independent economic value or actual use.**

IWS's assertion that its trade secrets enhance "operational safety, efficiency, and reliability in hydraulic fracturing and well completion operations" misses the point: the FAC does not explain ***how*** the trade secrets "enhance operational safety, efficiency, and reliability in hydraulic fracturing and well completion operations" or otherwise derive independent economic value. *Cf. GlobeRanger,* 836 F.3d at 492. Similarly, the FAC's conclusory allegation that "Downing utilized IWS's confidential information" is insufficient, especially because IWS admits that the "general" use of a handshake protocol is ***not*** the purported trade secret, but rather

6

IWS's "unique" handshake protocol. But, to show actual use, IWS points only to Downing's alleged use of a *generic* handshake protocol in its Freedom Series. This is merely one example of how IWS's failure to identify its trade secret with sufficient particularity robs Downing of fair notice of the claims against it.

    E.  **IWS's appeal to "circumstantial evidence" belies its argument that the FAC contains sufficient factual allegations.**

As a last-ditch effort to save its FAC, IWS asks the Court to excuse the lack of factual detail because trade secret misappropriation claims often rely on "circumstantial evidence." Dkt. 33 at 15. ***First***, IWS does not need to rely on "circumstantial evidence" to identify trade secrets that exist ***in its own systems***. IWS controls its own alleged "trade secrets" and can identify them without "circumstantial evidence." ***Second***, as Downing argues in its Motion (and which IWS does not refute), alleging mere "access" to information is insufficient. *Phazr, Inc. v. Ramakrishna*, No. 3:19-CV-01188-X, 2019 WL 5578578, at *4 (N.D. Tex. Oct. 28, 2019) (dismissing former employer's misappropriation claim where employer "merely recites the elements of a Trade Secrets Act claim as its allegations" and "failed to show that [defendant] [] acquired or used one of [employer's] trade secrets" despite the former employees having learned of the trade secrets during their employment). IWS cannot sidestep the "use" element simply by alleging that Downing had access to information due to its participation in the EQT Project.

**II.  IWS's Patent Claims Are Ineligible.**

To survive a motion to dismiss on eligibility grounds, an issue of law, IWS must do more than just refer to factual allegations in the FAC. "*Alice **step one*** presents a ***legal question***" that is answered by looking to "***the intrinsic evidence [in the Patent]***." *Cardionet, LLC v. Infobionic, Inc.*, 955 F.3d 1358, 1371-1372 (Fed. Cir. 2020). At Step Two, only specifically identified issues of fact warrant delaying a ruling on § 101. *See e.g.*, *Symbology Innovations, LLC v. Dexcom,*

7

*Inc.*, No. 2:23-CV-00473-JRG, 2024 WL 3543409, at *13 (E.D. Tex. July 25, 2024). And not any issue of fact will suffice—attempts to conjure an "inventive concept" under a legally impermissible theory, such as pointing to the abstract idea itself as the inventive concept, cannot save a complaint at Step Two. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1366-67 (Fed. Cir. 2023).

IWS fails on all accounts. At Step One, IWS relies almost exclusively on allegations in the FAC rather than intrinsic evidence in the patents. And at Step Two, IWS fails to identify any ***specific*** issue of fact that must be resolved before ruling on Downing's Motion—IWS points only to the use of a computer or the abstract idea itself as an "inventive concept."[3] This is not sufficient to survive a motion to dismiss.

Similarly, IWS's suggestion that claim construction is required also fails because IWS neither proposed a specific construction nor explained "how [the] proposed construction would affect the patent eligibility analysis." *See e.g.*, *Symbology*, 2024 WL 3543409, at *6-7; *Trinity*, 72 F.4th at 1360-61 ("[A] patentee must do more than invoke a generic need for claim construction…to avoid grant of a motion to dismiss under § 101." It must "***propose a specific claim construction***").

    A.    **IWS's efforts to salvage the '708 Patent are unavailing.**

        1.    ***Alice* Step One.**

IWS's arguments rely on a misinterpretation of § 101 caselaw. IWS—relying on a ***pre-Alice*** Supreme Court case, *Diehr*—suggests that the use of a computer to "tak[e] the fallible

---

[3] IWS's flawed *Alice* analysis is underscored by its baseless attack on Downing's citation of *Cellspin Soft, Inc. v. Fitbit, Inc.*, 316 F.Supp.3d 1138 (N.D. Cal. 2018). As is clear from Downing's Motion, *Cellspin Soft* was subsequently vacated and remanded on Step Two grounds, but not before the Federal Circuit affirmed the District Court's Step One analysis on which Downing relies. Dkt. 32 at n.9.

human mind out of [a] process entirely, is a telltale sign that the claimed invention is not abstract." Dkt. 33 at 27. The Supreme Court readdressed *Diehr* in *Alice* **and explained that the exact opposite was true**.[4] *Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208, 217, 223 (2014) ("the claims in *Diehr* were patent eligible because they improved an existing technological process, *not* because they were implemented on a computer."). Contrary to IWS's argument, it is well-established that invoking a computer merely as a tool to "tak[e] the fallible human mind out of [a] process entirely, is a telltale sign that the claimed invention" *is* abstract. See *id.*; *In re Abel*, 838 F. App'x 558, 561 (Fed. Cir. 2021); *Trinity*, 72 F.4th at 1362-63.

IWS's remaining cases are similarly unpersuasive. *XY* and *Thales Visionix* concerned claims including "***specific*** application of ***mathematical algorithms***" and "systems and methods that use inertial sensors in a ***nonconventional manner***," neither of which are present in the claims at issue. *See* 968 F.3d 1323, 1331 (Fed. Cir. 2020); 850 F.3d 1343 (Fed. Cir. 2017).[5]

### 2. *Alice* Step Two.

While IWS argues that the factual allegations in the FAC are sufficient to delay a ruling on Step Two, IWS does not identify any factual issue requiring resolution before the Court rules on eligibility—a question of law. The Court need only look to the factual allegations of the complaint ***if there are subsidiary questions of fact to be resolved such as whether a specific element or combination of elements was well-understood, routine, or conventional***.[6] *See Aatrix*

---

[4] IWS's misinterpretation of *Diehr* is further exemplified by the fact that the Supreme Court relied on *Diehr* for **Step Two**, while IWS twists it to apply at **Step One**. *Alice,* 573 U.S. at 223.

[5] Notably, despite saying that such claims are "comparable," IWS never identifies specific implementations of algorithms or arrangement of components in an unconventional manner in the '708 Patent.

[6] Even then, not "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification" will defeat a motion to dismiss. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020).

*Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). IWS does not identify any fact issues to be resolved. It offers only hypothetical benefits of the invention and allegations that applying a "handshake protocol" to drilling operations was inventive. Dkt. 33 at 28-29. But it is well-established that "neither attempting to limit the use of [an idea] to a particular technological environment nor a wholly generic computer implementation is sufficient" to supply an inventive concept. *See In re Killian*, 45 F.4th 1373, 1382-83 (Fed. Cir. 2022) (internal quotations omitted); *Alice*, 573 U.S. 223-24.

Separately, IWS's Step Two argument necessarily fails because IWS invokes the abstract idea itself as the inventive concept. Dkt. 33 at 23 (identifying the "use of a specific handshake protocol" as the "focus" at Step One), 28 (identifying the same as the "inventive concept" at Step Two). The abstract idea itself cannot be the inventive concept as a matter of law. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016). IWS's abstract claims cannot survive *Alice* Step One or Step Two and are, therefore, ineligible for patent protection.

      **B.**     **IWS efforts to salvage the '520 Patent claims are unavailing.**

          **1.**     *Alice* **Step One.**

IWS also invites the Court to apply an improperly narrow view of Step One that lacks any basis in fact or law. IWS asserts that, because the claims of the '520 Patent cannot be performed in the human mind or on pen and paper, they cannot be abstract. Dkt. 33 at 29. While the "pen and paper" test is *one* way of determining whether claims are abstract, there is "no single, hard-and-fast rule that automatically outputs an answer [at Step One] because there are different types of abstract ideas." *In re Killian*, 45 F.4th at 1381-82.

Further, IWS's mischaracterization of the claims as "pure hardware" ignores the language of the claims. The claims cover more than the mere arrangement of the physical components—they explicitly claim the *function* of those components—"controlling the position of the valve,"

10

"receiv[ing] commands," "mov[ing] the actuator," "send[ing] commands to the controlled actuator."[7] Only by stripping the claim of this language is IWS able to make its arguments.

Lastly, IWS avoids addressing what the "focus" of the invention is—the critical question answered at Step One. Instead, IWS spends nearly all of its analysis attacking quotes from Downing's brief ***that IWS truncates to change their meaning.***[8] The "focus" of the claims is on mere automation of a manual process—opening and closing a valve automatically with a computer. This is not a patentable invention. *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 155 (Fed. Cir. 2017).

    **2.**    *Alice* **Step Two.**

IWS does not identify an "inventive concept"—nor could it. Merely automating conventional components is not a patentable invention. *See In re Killian*, 45 F.4th at 1382-83; *Alice*, 573 U.S. 223-24. IWS's claims also fail at Step Two.

**III.**   **Conclusion**

For the foregoing reasons, Downing respectfully requests that the Court dismiss IWS's FAC in its entirety.

---

[7] IWS's assertion that Downing is taking a position that no "accused infringer has ever even attempted" (Dkt. 33 at 29-31) is plainly incorrect. In reality, the Federal Circuit regularly finds apparatus claims reciting physical components to be invalid when the "hardware" only "provides the environment in which the abstract idea . . . is carried out." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016); *Yu v. Apple, Inc.*, 1 F.4th 1040 (Fed. Cir. 2021). "[N]ot every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry." *In re TLI Commc'ns*, 823 F.3d at 611.

[8] Twice, IWS truncates quotes from Downing's brief to misrepresent Downing's position. *Compare* Dkt. 33 at 31 *with* Dkt. 32 at 30-31 ("the entire claim recites a computer ***that communicates generic signals to an automated lever that opens and closes a conventional valve***" and "[t]he '520 Patent's claims recite nothing more than a generic computer ***sending and receiving signals to control the position of a valve***") (truncated material emphasized).

11

Dated: December 9, 2024                    Respectfully submitted,

                                          By:     */s/ Tiffany M. Cooke*
                                                    John R. Emerson
                                                    Texas Bar No. 24002053
                                                    russ.emerson@haynesboone.com
                                                    Tiffany M. Cooke
                                                    Texas Bar No. 24087340
                                                    tiffany.cooke@haynesboone.com
                                                    Lee F. Johnston
                                                    Texas Bar No. 10839600
                                                    lee.johnston@haynesboone.com
                                                    Andrew Drott
                                                    Texas Bar No. 24126568
                                                    andrew.drott@haynesbroone.com
                                                    Dylan Freeman
                                                    Texas Bar No. 24131314
                                                    dylan.freeman@haynesboone.com

                                                    **HAYNES AND BOONE, LLP**
                                                    2801 N. Harwood Street, Suite 2300
                                                    Dallas, TX 75201
                                                    214-651-5000 (Telephone)
                                                    214-200-0615 (Facsimile)

                                                    **ATTORNEYS FOR DOWNING WELLHEAD EQUIPMENT, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record by electronic filing on this the 9th day of December 2024.

                                                                                                                               */s/  Tiffany M. Cooke*
                                                                                                                               Tiffany M. Cooke